# KATZMELINGER
370 LEXINGTON AVENUE, SUITE 1512
NEW YORK, NEW YORK 10017
www.katzmelinger.com

| | |
|---|---:|
| Nicole Grunfeld | t: 212.460.0047 |
| Katz Melinger PLLC | f: 212.428.6811 |
| | ndgrunfeld@katzmelinger.com |

January 15, 2026

**VIA ECF**
Honorable Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

>  Re: *Castillo et al v. El San Juan City Island on 5th Ave LLC et al*
>   Civil Action No. 1:21-cv-02824-GHW

Your Honor:

We are counsel for plaintiffs Mercy Castillo, Jessica Lora, and Emilio Ruiz[1] in this action, and write jointly with counsel for the defendants to seek approval of the parties' agreement to settle Plaintiffs' claims, which include claims for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"); claims for unpaid minimum wages under the NYLL; failure to timely pay wages pursuant to the NYLL; failure to provide wage statements and payroll notices pursuant to NYLL §§ 195 (1) and (3); failure to pay spread of hours wages pursuant to the NYLL; and, solely on behalf of Ms. Castillo, discrimination claims pursuant to Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

The parties write to respectfully request that the Court approve the parties' settlement agreement, a copy of which is submitted herewith as **Exhibit A**, and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41. As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

---

[1] On September 17, 2024, the Court granted our motion to withdraw as counsel for Plaintiff Ulises Rodriguez, whose claims were dismissed without prejudice on October 3, 2024.

**Plaintiffs' Claims**

Mercy Castillo

Ms. Castillo alleges that she was employed by defendants El San Juan" City Island on 5th Ave LLC, Manuel Vidal, and Josefina Vidal (collectively, "Defendants") as a bartender and cashier from in or around March 2019 until on or around March 17, 2020.

Ms. Castillo alleges that: from the start of her employment until in or around May 2019, she regularly worked a total of approximately twenty-one (21) hours per week from in or around June 2019 until in or around mid-September 2019, she regularly worked a total of approximately sixty-three (63) hours per week; from in or around mid-September 2019 until in or around mid-November 2019, she regularly worked a total of approximately sixty-six (66) hours per week; and from in or around mid-November until on or around March 17, 2020, she regularly worked a total of approximately sixty-five (65) hours per week.

Although Ms. Castillo regularly worked in excess of forty (40) hours per week, she alleges that Defendants failed to pay her overtime wages at a rate of 1.5 times her hourly rate of pay for hours worked in excess of forty (40) per week. Specifically, Ms. Castillo alleges that she was paid at the rate of $10.00 per hour for all hours worked, including hours worked over forty (40) per week. Ms. Castillo also alleges that Defendants violated the NYLL by failing to pay minimum wages, failure to pay spread of hours wages, and failure to provide her with payroll notices and accurate wage statements as required under NYLL §§ 195(1) and (3).

Furthermore, Ms. Castillo alleges that in or around early March of 2020, she informed Defendants that she was pregnant. Defendants subsequently shut down temporarily due to the Covid-19 pandemic. Ms. Castillo alleges that on or around July 1, 2020, Defendants re-opened for business, yet she was never instructed to return. Ms. Castillo learned that she was the only employee not called to return to work, and that she was replaced by a new, non-pregnant employee. Ms. Castillo was thereafter unemployed until in or around October 10, 2021.

Based on the foregoing, and as demonstrated in the calculations attached hereto as **Exhibit B**, Ms. Castillo estimates that she is owed damages of approximately $7,530.00 in unpaid overtime wages; $14,5855.00 in unpaid minimum wages; $765.00 in unpaid spread of hours wages; $22,880.00 in liquidated damages; $10,000.00 in damages for payroll notice and wage statement violations; and $99,015.00 in lost wages. Under the FLSA only, Ms. Castillo's total damages are approximately $15,060.00, as well as interest, costs, and reasonable attorneys' fees.

Jessica Lora

Ms. Lora alleges that she was employed by Defendants as a bartender from in or around July 2018 until on or around September 2020.

Ms. Lora's regularly worked a total of approximately 24 hours per week. From the start of her employment until in or around December 2018, Ms. Lora was paid a fixed hourly rate of $8.00: from in or around January 2019 until the end of her employment, Lora was paid a fixed hourly rate

of $10.00 for all hours worked. Ms. Lora therefore alleges that Defendants failed to pay her the minimum wage pursuant to the NYLL. She also alleges failure to provide her with payroll notices and accurate wage statements as required under NYLL §§ 195(1) and (3).

Based on the foregoing, and as demonstrated in the calculations attached hereto as **Exhibit B**, Ms. Lora estimates that she is owed damages of approximately $14,040.00 in unpaid minimum wages; an equal amount in liquidated damages; and $10,000.00 in damages for payroll notice and wage statement violations. Ms. Lora's claims arise only under the NYLL, and therefore she would not be entitled to any damages under solely the FLSA.

Emilio Ruiz

Mr. Ruiz alleges that he was employed by Defendants as a cook from in or around early September 2019 until on or around mid-January 2020.

Mr. Rodriguez alleges that he regularly worked a total of approximately forty-four and one-fourth (44.25) hours per week. Mr. Ruiz alleges that from the start of his employment until in or around December 2019, he was paid a fixed hourly rate of $10.00 for all hours worked, and from in or around January 2020 until the end of his employment, he was paid a fixed hourly rate of $11.00 for all hours worked.. Mr. Ruiz also alleges that Defendants violated the NYLL by failing to pay minimum wages, failing to pay him spread of hours wages, and failing to provide him with payroll notices and accurate wage statements as required under NYLL §§ 195(1) and (3).

Based on the foregoing, and as demonstrated in the calculations attached hereto as **Exhibit B**, Mr. Ruiz estimates that he is owed damages of approximately $541.88 in unpaid overtime wages; $4,403.75 in unpaid minimum wages; $5,200.63 in liquidated damages; and $10,000.00 in damages for payroll notice and wage statement violations. Under the FLSA only, Mr. Ruiz's total damages are approximately $9,891.26, as well as interest, costs, and reasonable attorneys' fees.

## Defendants' Defenses

Defendants deny any and all wrongdoing and maintain that Plaintiffs were properly paid for all hours worked. They also deny that discrimination played any role in their decision to not call Ms. Castillo back to work.

The attached settlement agreement contains a full settlement of all claims, inclusive of those not arising under the FLSA, as well as attorneys' fees and costs. The amount agreed upon reflects a mutual desire to reach an amicable resolution in this matter without additional litigation. As explained in further detail below, and without any admission of wrongdoing by any party, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

## The Proposed Settlement Should Be Approved

In matters such as this one, encompassing both FLSA and non-FLSA claims, the parties frequently execute two separate settlement agreements: one for the FLSA claims, which is subject to judicial review pursuant to *Cheeks v. Freeport Pancake House*, 796 F. 3d 199 (2d Cir. 2017);

and a private agreement settling the other claims, which is not subject to judicial review. While the parties herein have executed a single agreement to settle all claims, the agreement should be treated as bifurcated to the extent that the settlement terms of Plaintiffs' non-FLSA claims do not require court approval. *See, e.g., Gaspar v. Personal Touch Moving, Inc.,* 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("The broader release limited to Gaspar personally is not subject to the Court's scrutiny because it stems from a non-FLSA claim that happens to be settled in the same agreement."); *Chowdhury v. Brioni America, Inc.,* 2017 WL 5953171, at *6 (S.D.N.Y. Nov. 29, 2017). Accordingly, this Court's review or approval is not required for settlement terms related to Plaintiffs' NYLL claims and Ms. Castillo's discrimination claim.

1. The settlement amount is fair and reasonable

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiffs' FLSA claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of overreaching by Defendants. To the contrary, Plaintiffs are represented by competent counsel and the settlement was reached after extensive negotiations between the parties. Moreover, the settlement amount, $60,000.00 results in a recovery to Plaintiffs of $35,492.67. Including liquidated damages, Plaintiffs would be entitled to $16,143.75 under only the FLSA Therefore Plaintiffs' recovery from settlement ($35,492.67) is more than twice Plaintiffs' damages under the FLSA, which is the only portion of this matter subject to review by the Court. Furthermore, the settlement amount is fair and reasonable given the time and costs associated with continued litigation; the risk that Plaintiffs would not prevail on any or all of their claims after a trial; and the possibility that Plaintiffs would not be able to recover from Defendants should Plaintiffs be awarded a substantial judgment.

2. The settlement agreement was the result of arm's length negotiations by the parties

The proposed settlement is also the product of negotiation between parties represented by experienced wage-and-hour counsel following extensive settlement discussions. Plaintiffs and Defendants hold opposing views on the merit and value of Plaintiffs' claims; however, the arm's length bargaining between the represented parties, along with the information exchanged during formal discovery, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Given that the parties completed most of fact discovery, including taking the depositions of all parties, and through candid discussions between counsel, the parties can assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, because Plaintiff is no longer employed by Defendants, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014

U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiffs' alleged injuries will not recur as Plaintiffs are no longer employed by Defendants; (ii) Defendants explicitly deny any wrongdoing; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36.

3. Plaintiff's counsels' fees are reasonable

Lastly, the parties agree that the settlement amount is a reasonable compromise of all parties' positions, and the proposed amount of attorneys' fees is also fair and reasonable as Plaintiffs' counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiffs. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiffs' counsel over Plaintiffs.

Under the proposed agreement, Plaintiffs' counsel would recover $6,761.00 as reimbursement for costs and expenses[2] and $17,746.33 in fees. Under Plaintiff's contingency fee agreement, attached hereto as **Exhibit D**, Plaintiffs' counsel is entitled to recover, out of and deducted from Plaintiff's settlement amount, fees totaling one-third of any amounts recovered on behalf of Plaintiff after reimbursement of costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.,* 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to Plaintiffs' retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one-third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* 2013 U.S. Dist. LEXIS 172102, at *9-10 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement).

As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit E,** Plaintiff's counsel has spent a total of 737.40 hours on this matter as follows: Kenneth Katz: 0.8 hours; Nicole Grunfeld, 101.30 hours; Adam Sackowitz, 1.2 hours; Katherine Morales, 419.10 hours; Nicola Ciliotta, 56.5 hours; Alexa Salazar, 1.40 hours; Jarret Bodo, 5.50 hours, and ; Jonathan Trinidad-Lira, 102.10 hours. Plaintiff's counsels' hourly rates - $575.00l; $525.00, $435.00, $375.00, $375.00, $350.00, $350.00, and $325.00 respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See Rubin v. HSBC Bank USA,*

---

[2] Other than $402.00 for the initial filing fee, Plaintiffs' costs and expenses are documented in the invoices attached hereto as **Exhibit C.**

*NA*, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025)(approving rates of $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals); *Quispe v. Stone & Tile Inc.*, 2022 WL 960926, at *6 (E.D.N.Y. Feb. 1, 2022) (approving hourly rate of $500.00 for a solo practitioner).

Mr. Katz is the founding member and managing partner of Katz Melinger PLLC, a boutique firm established in 2012. Mr. Katz earned his B.S. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr. Katz was admitted to the Bar of the state of New York in 2004 and New Jersey in 2016, and his practice is focused primarily on litigation, with substantial experience handling wage and hour matters.

Ms. Grunfeld is a partner at Katz Melinger PLLC, where she has worked since 2013. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005 and New Jersey in 2018, and has focused on Plaintiff's employment matters since 2007. She currently serves on the Board of the New York chapter of the National Employment Lawyers' Association and the Board of Advisors of the NYU Center for Labor and Employment Law.

Mr. Sackowitz is the senior associate at Katz Melinger PLLC. Mr. Sackowitz was admitted to the Bars of the states of California in 2014, New York in 2015, and New Jersey in 2016, and has focused his practice on employment law for more than eight years. Mr. Sackowitz earned his B.S. from Cornell University in 2009 and his J.D. from the University of California at Los Angeles School of Law in 2014.

Ms. Morales was an associate at Katz Melinger PLLC. She earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017; she was admitted to practice in New York in 2018 and New Jersey in 2020. Prior to joining the firm in 2017, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits. While at the firm, Ms. Morales focused her practice exclusively on employment law matters.

Nicola Ciliotta was an associate at the firm from October 2018 until November 2021. Mr. Ciliotta earned his B.A from Vanderbilt University and his J.D. from Penn State Law School, and has been a member in good standing of the New York Bar since 2019. While employed with the firm, Mr. Ciliotta focused his practice exclusively on employment law matters.

Ms. Salazar was an associate at Katz Melinger PLLC. She earned her B.S. from Cornell University in 2016 and her J.D. from St. John's University School of Law in 2020. She was admitted to the New York Bar in 2021, and focused on employment law while employed at the firm.

Mr. Trinidad-Lira was an associate at Katz Melinger PLLC, having earned his B.A. from Fordham University in 2019 and his J.D. from Seton Hall University School of Law in 2022. Mr. Trinidad-Lira focused his practice on employment law during the two years he worked at the firm.. Mr. Trinidad-Lira was admitted to practice in New Jersey in 2022 and to the New York Bar in 2023.

      Mr. Bodo was an associate at Katz Melinger PLLC. He earned his B.A. from Siena College in 2015 and J.D. from Hofstra University School of Law in 2020, where he was the Editor-in-Chief of the Journal of International Business & Law. He was admitted to the New York Bar in 2021, since which time he has focused his practice exclusively on labor and employment law.

      Dio Hernandez is the Senior Legal Assistant at Katz Melinger PLLC, where she has worked on employment matters since 2018; Jessica Tilton was a summer law clerk; and Ms. Rosales was a Legal Assistant at the firm.

      The $17,746.33 fee sought by Plaintiffs' counsel is significantly less than Plaintiffs' counsel's "lodestar" amount of $275,537.00. Indeed, the fee being sought is less than 7% of the lodestar and is therefore reasonable. As set forth herein, Plaintiff's counsel negotiated a favorable settlement for Plaintiffs, which will allow Plaintiffs to avoid the significant risk of either receiving an unfavorable outcome in this matter or, if Plaintiffs ultimately prevailed on their claims, attempting to enforce a judgment against Defendants.

      Accordingly, we respectfully request judicial approval of the parties' proposed settlement agreement, and further request permission to submit a stipulation of dismissal with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

Respectfully submitted,

| | |
|---|---|
| */s/ Nicole Grunfeld* | */s/ Mark Weinstein* |
| Nicole Grunfeld | Mark J. Weinstein |
| Katz Melinger PLLC | MARK J. WEINSTEIN, ESQ. |
| 370 Lexington Avenue, Suite 1512 | 127 W. Main Street, 206 |
| New York, New York 10017 | Tarrytown, NY 10591 |
| T: (212) 460-0047 | (914) 400-9993 |
| ndgrunfeld@katzmelinger.com | mjwattorney@aol.com |
| *Attorneys for Plaintiffs* | *Attorney for Defendants* |